**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| STAR INSURANCE CO., et al., | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 01-2128-CM |
| BERRY INSURANCE AGENCY and WALTER G. BERRY, III, | ) |
| Defendants, | ) |
| and | ) |
| ACE AMERICAN INSURANCE CO., | ) |
| Garnishee. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the court on plaintiffs/garnishors Star Insurance Company, Savers Property & Casualty Insurance Company, and Employers Reinsurance Corporation's Motion for Declaratory Judgment (Doc. 136) and garnishee Ace American Insurance Company's Cross Motion for Summary Judgment (Doc. 146).

**I.    Facts**

    **A.    The Parties**

Plaintiff Star Insurance Company is a Michigan corporation, in good standing, with its principal place of business in Michigan. Plaintiff Savers Property & Casualty Insurance Company is a Missouri corporation, in good standing, with its principal place of business in Kansas. Plaintiff Employers Reinsurance Corporation is a Missouri corporation, in good standing, with its principal place of business in Kansas.

During all time periods relevant to this case, defendant Berry Insurance Agency was a Texas insurance agency with its principal place of business located in Richardson, Texas. Garnishee ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in Philadelphia.

The parties agree that jurisdiction and venue are proper in this court.

### B.     The Applicable Insurance Policy

ACE insured Berry Insurance Agency and Walter G. Berry, III (collectively "Berry") for professional liability, errors and omissions under Policy No. CRL921175 ("the policy") issued to named insured Walter G. Berry, III, d/b/a Berry Insurance Agency, in Richardson, Texas. The policy was a "claims made" policy with a limit of liability in the amount of $1 million per claim and per annual aggregate with a deductible of $1,000 per claim. The policy had a coverage period of January 25, 2001 to January 25, 2002, with an extended reporting period of ninety days beginning immediately after the end of the policy period. The policy required Berry, in the event he received a claim, to, among other things, "[n]otify [ACE] in writing as soon as possible during the Policy Term" and "[i]mmediately forward to [ACE] all documents which [he] receive[d] in connection with the claim." The policy's declarations specified that notice of a claim was to be sent to Crump Insurance Services of Houston, Inc. ("Crump") in Houston, Texas.

The policy stated on the face of its declarations page, in capital letters:

THIS INSURANCE IS WRITTEN ON A CLAIMS-MADE AND REPORTED
BASIS AND PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE THE
RESULT OF WRONGFUL ACTS OCCURRING SUBSEQUENT TO THE
RETROACTIVE DATE STATED BELOW AND WHICH ARE FIRST MADE
AGAINST YOU AND REPORTED TO US IN WRITING WHILE THIS
INSURANCE IS IN FORCE.

The applicable retroactive date was defined in item six of the declarations as January 25, 1993.

The fact that the policy was issued on a "claims-made and reported" basis was reiterated at the top of the policy's first page in capital letters:

> THIS POLICY IS WRITTEN ON A "CLAIMS-MADE AND REPORTED" BASIS WITH DEFENSE EXPENSES IN ADDITION TO THE POLICY LIMITS AND PROVIDES PROFESSIONAL LIABILITY COVERAGE FOR THOSE CLAIMS WHICH ARE THE RESULT OF WRONGFUL ACTS OCCURRING SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU AND REPORTED TO US WHILE THIS POLICY IS IN FORCE.  NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US AFTER THE END OF THE POLICY TERM UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.

The coverage section of the policy's insuring agreement explained the nature of the insurance Berry was provided:

> We will pay on your behalf all amounts up to the limit of liability which you become legally obligated to pay as damages and defense expenses to which this insurance applies.  The damages must be caused by a wrongful act arising out of the providing of professional services by you or anyone for whose professional services you are legally responsible.
>
> The wrongful act described above must happen on or after the policy effective date, or the retroactive date, if any, and the claim must be first made against you and reported to us while this policy is in force.

The policy contained the following language with regard to extended reporting periods:

> Extended Reporting Periods provide additional time in which to report claims that arise from wrongful acts which occur subsequent to the RETROACTIVE DATE but prior to the end of the policy period.  They do not extend the policy period or change the scope of coverage provided by the policy.  Once in effect, Extended Reporting Periods may not be canceled.

The policy also contained the following language with regard to extended reporting periods under the subheading "Basic Extended Reporting Period":

> A Basic Extended Reporting Period is automatically provided without additional charge.  This period starts with the end of the policy period and lasts for 90 days.  This automatic extension will cover claims made against you during this 90 day period

arising from wrongful acts that took place subsequent to the RETROACTIVE DATE and before the end of the policy period.

The policy defined the term "claim" to mean "a written demand received by you for money or professional services including the serving of a suit or receipt of notification of arbitration which alleges a wrongful act by you or any other person for whose wrongful acts you are legally responsible." The policy defined "professional services" to mean:

> [T]hose insurance related services performed for others, including the direct placement of reinsurance, for commission or a fee as an insurance agent, insurance broker, insurance general agent, managing general agent, surplus lines broker, insurance consultant, employee benefits insurance counselor, estate insurance planner, insurance claims administrator, insurance appraiser, insurance premium finance, notary public and board member of a Not-for-Profit insurance professional association.

The term "wrongful act" was defined to include "any actual or alleged act, error or omission committed solely in the performance of, or failure to perform, professional services."

### C. The Claims Asserted Against Berry

Plaintiffs filed their original complaint against Berry on March 16, 2001. The original complaint contained counts of breach of contract, breach of fiduciary duty, declaratory judgment and demand for equitable accounting. Specifically, the complaint stemmed from an "agency and service agreement" between plaintiffs and Berry, under which Berry was appointed as plaintiffs' agent "to develop, market, sell, underwrite and administer an insurance program for the American Association of Taxicab Owners and Operations ("AATOO") within defined states, under terms specified within the contract." Plaintiffs accuse Berry of committing a variety of wrongful acts in connection with the parties' agreement, alleging, among other things, that Berry had failed to perform his contractual obligations, had breached fiduciary duties to them imposed by the agreement, and had refused to provide them with required financial information or to remit premiums to them that had been earned.

-4-

In five pleaded counts, the complaint demands money damages, declaratory and injunctive relief, and an equitable accounting. As of July 20, 2001, plaintiffs estimated their damages to be $1.5 million or perhaps more, depending upon an accounting and continuing premium payments. Berry did not report this action to ACE prior to the end of the policy period.

Plaintiffs moved for leave to file an amended complaint against Berry on December 20, 2001. The amended complaint contained primarily the same counts as the original complaint and added three additional counts for negligence and negligent misrepresentation. Those new counts were based on alleged wrongful acts committed by Berry in connection with the parties' agency and services agreement. At the time plaintiffs sought leave to file the first amended complaint in the lawsuit, plaintiffs alleged damages of at least $1.8 million. No notice of the filing of the proposed amended complaint was provided to ACE prior to the end of the policy period.

On or about January 3, 2002, Berry opposed the proposed amendment to the original complaint. The court granted plaintiffs' motion for leave on February 6, 2002, over Berry's opposition, and the amended complaint was deemed filed on that date.

**D.     Claim Reporting**

On January 28, 2002, counsel for plaintiffs sent a letter to Crump and forwarded a copy of the proposed first amended complaint. In that letter, plaintiffs' counsel informed Crump of their "currently pending" suit, advised that they had recently "amended our Complaint" against Berry, and stated:

> We understand that you provided professional liability errors and omissions insurance to Mr. Berry at the time Mr. Berry was committing his negligent acts. Accordingly, please allow this correspondence to serve as formal notice that we have made a claim against your insured which falls within the coverage you have provided. For your convenience, we have attached a copy of our amended complaint.

ACE first became aware of the lawsuit against Berry on January 29, 2002, four days after the policy expired, when Pat Canady of Crump faxed the January 28, 2002 letter and a copy of the proposed first amended complaint for damages to ACE.  Crump also mailed the originals on that same date.  Plaintiffs have no evidence that ACE learned of the claim set forth in the first amended complaint prior to January 29, 2002.  Plaintiffs have no evidence that Berry's agent, Crump, learned of the claim set forth in the first amended complaint prior to January 29, 2002.

On or about February 5, 2002, ACE sent a letter to Berry and his attorney denying coverage under the policy for the following reasons:

> Because this claim was not reported prior to the policy expiration date and this is a Claims-Made and Reported policy there is no coverage for this loss. The amended complaint was supplied to your attorney in December, 2001, which is prior to the extended reporting period.  Therefore, this claim was made against you prior to the policy expiration date.  The extended reporting period only covers losses made against you during the 90 day period of the extended reporting period.

### E.  Settlement

On February 19, 2002, Berry filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, where the case was eventually converted to Chapter 7.  In connection with those bankruptcy proceedings, plaintiffs and Berry reached a settlement of plaintiffs' lawsuit and, together with Berry's creditors and the appointed Chapter 7 Trustee, filed a joint motion in the bankruptcy court for approval of the settlement.

As part of the settlement in this action, Berry agreed to "use his best efforts to cooperate in all actions by [plaintiffs] to pursue claims asserted in" this action.  As part of the settlement agreement, plaintiffs agreed to pay 10% of their net recovery in the lawsuit to the bankruptcy trustee overseeing Berry's bankruptcy.  Plaintiffs also agreed not to seek any further execution against Berry's personal

assets but to attempt to collect on the judgment in this action from ACE only. Berry and plaintiffs stipulated to judgment being entered against Berry in the amount of $12 million. Plaintiffs seek to collect a portion of that judgment up to the policy limits through this garnishment action against ACE.

### F. The Pending Motions

Plaintiffs have requested that the court, pursuant to Fed. R. Civ. P. 56 and 57, enter a declaratory judgment obligating ACE to pay the liability limit of the policy it issued to Berry. ACE has cross-moved for summary judgment, claiming that plaintiffs' garnishment claim should be dismissed. ACE contends that Berry failed to report the claim to ACE before the policy expired, which precluded coverage for the claim as a matter of law.

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Both parties have moved for summary judgment.

## III. Analysis

The facts in this case are not in dispute. Plaintiffs and ACE disagree primarily about the interpretation of the insurance policy. Specifically, the parties dispute whether Berry provided ACE notice of plaintiffs' claims against him in a timely manner pursuant to the policy's provisions. Both parties have requested that the court interpret the policy and make judgments as a matter of law. The parties agree that the insurance contract at issue was formed in Texas.

A federal court sitting in diversity is bound to apply the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This court is sitting in diversity, is located in Kansas, and

-7-

therefore must apply the conflicts of law rules of Kansas. *Id.* Kansas follows *lexi loci contractus*, meaning that the law of the state where the contract is made applies to the provisions of the contract. *See Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 147 F. Supp. 2d 1057, 1064 n.3 (D. Kan. 2001); *Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491, 1499 (D. Kan. 1995). Thus, the court will apply Texas law to the substantive issues addressed, as is necessary.

"Interpretation of insurance contracts is governed by the rules of contract interpretation. The words in an insurance policy are given their ordinary meaning unless the policy clearly gives them another meaning." *Grimes Constr., Inc., v. Great Am. Lloyds Ins. Co.*, 188 S.W.3d 805, 810 (Tex. App. 2006) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) and *Sec. Mut. Cas. Co. v. Johnson*, 584 S.W. 2d 703, 704 (Tex. 1979)). "If a court can give a contract only one reasonable meaning, the contract is not ambiguous and the court will enforce it as written." *Lundstrom v. United Svcs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 91 (Tex. App. 2006) (citing *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998)). "[W]e construe the terms of the contract as a whole and consider all of its terms, not in isolation, but within the context of the contract." *SMI Realty Mgmt. Corp. v. Underwriters at Lloyd's, London*, 179 S.W.3d 619, 624 (Tex. App. 2005).

"An insurer's duty to defend is determined under the so-called 'eight corners rule' by examining the allegations in the pleadings and the language of the insurance policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 2006 WL 1892669, at *2 (Tex. App. July 6, 2006) (citing *Nat'l Union Fire Ins. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). "In applying the eight-corners rule for analyzing a duty to defend, [courts] must give the allegations in the petitions a liberal interpretation. Generally, an insurer will be found to have a duty to defend if the petition in question potentially states a cause of action within the policy coverage." *Id*. at *4.

-8-

Having reviewed the parties' arguments, the applicable law, and all of the documents in this case, the court finds that summary judgment for ACE is appropriate. Specifically, in giving the words in the policy their reasonable meaning and liberally construing the language of the original complaint and the amended complaint, the court finds that the claims enumerated by plaintiffs in the original complaint filed with this court on March 16, 2001, potentially stated a cause of action that was covered by the terms of the policy. Further, the December 2001 proposed amended complaint contained claims that certainly were potentially covered by the policy. It is undisputed that Berry was aware of both complaints prior to the policy's expiration and failed to report either to ACE. Both complaints alleged wrongdoing that occurred ***during*** the policy period and were made known to Berry ***before*** the policy's expiration. This is especially important in this case, because under Texas law and pursuant to the very specific language in the policy, "claims-made policies . . . cover only injuries or damages that come to the attention of the insured and are made known to the insurer during the policy period." *Pine Oak Builders, Inc.*, 2006 WL 1892669 at *7.

The court believes that a reasonable reading of the plain language of the policy demonstrates that the basic extended reporting period applied only to claims asserted against Berry during the ninety-day period following the policy's expiration based on wrongful acts occurring between the retroactive date (January 25, 1993) and the end of the policy period (January 25, 2002). However, even considering the extended reporting provisions of the policy, plaintiffs' claims are not covered by the extended reporting provisions. As the court noted above, it is undisputed that: 1) Berry was aware of the original complaint and the proposed amended complaint prior to the policy's expiration; 2) the original complaint and the proposed amended complaint alleged wrong-doing while the policy was in effect; and 3) Berry failed to notify ACE until after the policy expired.

Plaintiffs' argument that the allegations in their proposed amended complaint did not create a valid and reportable claim(s) to ACE until the court permitted the formal filing of the amended complaint on February 6, 2002, after the policy expired, is unpersuasive. The language of the policy itself states that a claim is "a written demand received by you for money or professional services including the serving of a suit . . . which alleges a wrongful act by you or any other person for whose wrongful acts you are legally responsible." The court finds that plaintiffs' proposed amended complaint, which was attached to plaintiffs' December 2001 motion for leave, was served on Berry in December 2001 and was, at the very least, a written demand for money or professional services that should have been reported to ACE. Pursuant to the policy's language, Berry should have notified ACE in writing as soon as possible about plaintiffs' lawsuit against him and immediately forwarded all documents he received in connection with the potential claim to ACE. Berry was clearly aware of the potential for a claim under his policy at least a month before the policy expired and failed to provide any notice to ACE. In fact, first notice of plaintiffs' claims against Berry were first provided to ACE not by Berry, but by plaintiffs themselves.

Moreover, plaintiffs' argument is weakened by the fact that plaintiffs themselves sent correspondence notifying ACE of the proposed amended complaint on January 28, 2002. In that correspondence, sent to ACE a week before the court entered its order approving the amendment to the complaint, plaintiffs stated that they believed the allegations in the proposed amended complaint to be covered by the policy.

While the court commends plaintiffs and Berry for attempting to reach an amicable resolution of the claims against Berry, the court finds that Berry's failure to report the allegations in either the original complaint or the proposed amended complaint to ACE, as required by the unambiguous terms of the claims-made policy, bars recovery from ACE. Specifically, plaintiffs' claims against

-10-

Berry are barred from coverage under this type of claims-made policy, where Berry was aware of the potential for coverage under the policy prior to the policy's expiration and failed to report any potential claim to ACE before the policy expired.  *See Pine Oak Builders, Inc.*, 2006 WL 1892669 at *7.

**IT IS THEREFORE ORDERED** that plaintiffs Star Insurance Company, Savers Property & Casualty Insurance Company, and Employers Reinsurance Corporation's Motion for Declaratory Judgment (Doc. 136) is denied and garnishee Ace American Insurance Company's Cross Motion for Summary Judgment (Doc. 146) is granted.

**IT IS FURTHER ORDERED** that plaintiffs' claims against ACE are hereby dismissed.

Dated this 22nd day of August 2006, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**